UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIPIO JOHN SAESEE,<br><br>          Petitioner,<br><br>   v.<br><br>M.D. MCDONALD, Warden,<br><br>          Respondent. | 1:09-CV-02173 LJO MJS HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus (Pet., ECF No. 1) pursuant to 28 U.S.C. § 2254.

## I.    BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Tulare, following his conviction by jury trial on October 16, 2007, of first degree murder, shooting from a motor vehicle, and possession of a firearm by a felon. (LD[2] No. 3. at 3-4.) As to each count, the jury found true special-circumstance allegations relating to Petitioner's participation in and benefit to a criminal street gang, use of a firearm, and Petitioner's prior felony convictions. (Id.)

---

[1] This information is derived from the state court records lodged by Respondent with his response and is not disputed by the parties.

[2] "LD" refers to the documents lodged with Respondent's answer to the petition.

On November 13, 2007, the trial court denied Petitioner probation and sentenced him to state prison for life without the possibility of parole with a consecutive term of 33 years. (Id. at 4.) On February 18, 2009, the California Court of Appeal, Fifth Appellate District (hereinafter "Fifth DCA"), affirmed the judgment of the trial court. (Id.) Petitioner filed a petition for review in the California Supreme Court on March 20, 2009. (LD No. 4.) The petition was summarily denied on May 1, 2009. (LD No. 5.)

On December 15, 2009, Petitioner filed the instant federal habeas corpus petition. Petitioner raises the following two claims for relief: (1) the trial court erred in failing to instruct the jury sua sponte with Judicial Council of California Criminal Jury Instruction (hereinafter "Jury Instruction") 358, which advises the jury to "consider with caution" out-of-court oral statements attributed to a defendant; and (2) the special circumstance findings must be reversed because the jury was not instructed, per Jury Instruction 700, as to the prosecution's burden of proof and the requirement of jury unanimity. On August 23, 2010, Respondent filed an answer to the petition. Petitioner filed a traverse on October 1, 2010.

## II. STATEMENT OF THE FACTS[3]

> On May 8, 2006, around 11:30 p.m., [Petitioner] was driving near the residence of 15-year-old C. She was outside, wearing a red shirt, and a conversation took place between [Petitioner] and her regarding her gang affiliation. C. denied any affiliation, and [Petitioner] told her she was in "O.T. territory." "O.T." is gang slang for the criminal street gang Oriental Troop (hereafter O.T.), which identifies with the color blue. C., who had a friend who had suffered at the hands of that gang, responded "Fuck O.T." [Petitioner] got out of his car and tried to strike at C. He also showed her a gun and asked her if she lived at that residence. He then said, "Watch bitch, when I fucking come back." [Petitioner] then drove away.
>
> C. became concerned and encouraged her family members to go inside the house. Shortly thereafter, Viscarra, C.'s sister, was standing near the curb talking to several friends in a vehicle. Viscarra had her hair in a ponytail, in a style similar to C.
>
> After [Petitioner] left the area, he met with several of his gang-affiliated friends. He told them what had happened, they got in his vehicle, and he drove them back to C.'s residence. He drove by the residence, went to the end of the street and made a U-turn. He turned his car's lights off and drove past C.'s residence slowly. As he drove past, two shots were fired from his car, one of

---

[3]The Fifth DCA's summary of the facts in its February 18, 2009 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

which struck Viscarra in the heart. She later died at the hospital.

>   Officers responded quickly to [Petitioner's] neighborhood. He was located and arrested. Officers found a gun nearby that matched the description provided by witnesses.

(See LD No. 3.)

## III.   ANALYSIS

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. §§ 2241(d), 2254(a).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B.   Standard of Review

Under the AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established

1 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S.
2 at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal
3 law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's]
4 decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S.
5 at 412). "In other words, 'clearly established Federal law' under 28 U.S.C. § 2254(d)(1) is the
6 governing legal principle or principles set forth by the Supreme Court at the time the state
7 court renders its decision." Id.

8 Finally, this Court must consider whether the state court's decision was "contrary to, or
9 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S.
10 at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court
11 may grant the writ if the state court arrives at a conclusion opposite to that reached by [the
12 Supreme] Court on a question of law or if the state court decides a case differently than [the]
13 Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also
14 Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court
15 may grant the writ if the state court identifies the correct governing legal principle from [the]
16 Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."
17 Williams, 529 U.S. at 413.

18 "[A] federal court may not issue the writ simply because the court concludes in its
19 independent judgment that the relevant state court decision applied clearly established federal
20 law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at
21 411.  A federal habeas court making the "unreasonable application" inquiry should ask
22 whether the state court's application of clearly established federal law was "objectively
23 unreasonable." Id. At 409.

24 Petitioner has the burden of establishing that the decision of the state court is contrary
25 to or involved an unreasonable application of United States Supreme Court precedent. Baylor
26 v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding
27 on the states, Ninth Circuit precedent remains relevant persuasive authority in determining
28 whether a state court decision is objectively unreasonable.  See Duhaime v. Ducharne, 200

F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, 28 U.S.C. § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, 28 U.S.C. § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (9th Cir. 2004).

### C.  Claim One - Failure to Give Jury Instruction 358

Petitioner first alleges that the trial court erred in failing to instruct the jury sua sponte with Jury Instruction 358, which instructs the jury to "consider with caution" out-of-court oral statements attributed to a defendant. In making this claim, Petitioner does not raise any question of federal law on which this court may grant relief. Jury instructions are governed by state procedural and substantive law. In construing the claim in a light most favorable to Petitioner, the Court will assume that Petitioner is alleging this error by the state courts constituted a violation of his right to due process of law under the Fourteenth Amendment. Respondent contends Petitioner has not made a claim upon which this court may grant relief, that Petitioner is incorrect, and that the state court reasonably rejected the claim.

Petitioner presented this claim on direct appeal to the Fifth DCA and California Supreme Court. Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable

application of federal law under 28 U.S.C. § 2254(d)(1)).

1.     State Court Review

In denying Petitioner's claim, the appellate court stated as follows:

*I. FAILURE TO GIVE [JURY INSTRUCTION] NO. 358*

Acknowledging the record contains sufficient evidence to support his conviction, [Petitioner] contends his exact statements prior to the shooting were critical to the prosecution's case and the trial court committed reversible error by failing to give [Jury Instruction] No. 358[FN3] sua sponte. The People concede the trial court should have given the instruction but maintain its omission constitutes harmless error.

> FN3. [Jury Instruction] No. 358 (evidence of defendant's statements) provides:
>
> "You have heard evidence that the defendant made [an] oral or written statement[s] (before the trial/while the court was not in session). You must decide whether or not the defendant made any (such/of these) statement [s], in whole or in part. If you decide that the defendant made such [a] statement[s], consider the statement[s], along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give such [a] statement[s].
>
> "[You must consider with caution evidence of a defendant's oral statement unless it was written or otherwise recorded.]"

[Petitioner] argues that the testimony of C. and A.S., who witnessed the argument between [Petitioner] and C., was pivotal, and there were disputes with regard to what was said by [Petitioner] during the original altercation. [Petitioner] claims that some of the words attributed to him by the young women did not reflect what he said, but an amalgam of misrecollection, misreporting and/or misinterpretation of what he said.

A trial court commits error when it fails to instruct sua sponte that evidence of oral admissions by the defendant must be viewed with caution, unless the defendant's incriminating statements are written or tape recorded. Such an omission does not constitute reversible error if, upon a reweighing of the evidence, it does not appear reasonably probable that a result more favorable to the criminal defendant would have been reached in the absence of the error. (People v. Beagle (1972) 6 Cal.3d 441, 455-456; People v. Dickey (2005) 35 Cal.4th 884, 905 (Dickey).) The instruction applies to any oral statement of the defendant, whether made before, during, or after the crime. (People v. Carpenter (1997) 15 Cal.4th 312, 393, disapproved on another point in Verdin v. Superior Court (2008) 43 Cal.4th 1096, 1106.)

Here, A.S. went to see her friend C. at the residence on Turner Street on May 8, 2006. At about 11:40 p.m., C. left her house and went to see a friend who lived a few houses away. C. was dressed in a red shirt. When C. was outside, A.S. heard her say, "Don't disrespect me." A.S. went outside to see what was happening and heard [Petitioner] ask C. what gang she "claimed." A.S. heard C. tell [Petitioner] she was not a gang member.

[Petitioner] said he was part of the O.T., and that the Turner Street neighborhood was O.T. land.

C. told [Petitioner], "fuck OT's." A.S. was standing next to C. when C. made this statement. [Petitioner] became angry, jumped out of his car, and raised his arm as though he was going to hit C. A.S. jumped in front of [Petitioner] to break up the encounter. [Petitioner] remained angry and said, "fuck Nortenas, fuck northerners." A.S. watched [Petitioner] reach for his right hip and saw a gun on his person. He pulled the gun out from his hip area. A.S. described the weapon as dark with a white handle and thought it might have been a .45-caliber handgun. [Petitioner] said he wanted to shoot both C. and A.S.

Leo Loya watched the encounter from his nearby house. C. yelled for Loya to come over and Loya pushed [Petitioner] into his vehicle. [Petitioner] kept saying, "No one is going to check me. You guys are just Nortena bitches, busters." According to A.S., [Petitioner] also said, "I ought to kill you guys, off you guys." Once [Petitioner] was back in his car, C. and A.S. walked toward a neighbor's house. Loya got into the car with [Petitioner] and [Petitioner] drove over to where C. and A.S. were standing. [Petitioner] asked C. where she lived and, against A.S.'s advice, C. told him. A.S. heard [Petitioner] say he was going to come back and kill the two girls. C. heard [Petitioner] say, "Watch, bitch. Watch when I fucking come back." C. interpreted that to mean he was coming back to shoot her. After making the threat, [Petitioner] drove away.

Raen See is [Petitioner's] cousin and a codefendant in the case. See testified for the People at [Petitioner's] trial. See said that on May 8, 2006, he was at some apartments on northwest First Street with [Petitioner] and Loya. [Petitioner] and Loya left the apartment building and returned a few minutes later. [Petitioner] was angry when he returned because someone had said, "fuck OT's." See said [Petitioner] told four of his male friends to get in the car. [Petitioner] was still in the driver's seat and they departed. They returned 10 minutes later and [Petitioner] was still seated in the driver's seat. The occupants of the car appeared nervous. One of the occupants handed See a revolver and some bullets and said there was something wrong with the firearm. See took the partially loaded firearm into his apartment and began to fix it. Police arrived about five minutes later and See was in possession of the gun and bullets.

[Petitioner] initially claims the omission of [Jury Instruction] No. 358 amounted to prejudicial error. A careful reading of his argument, however, reveals an attack on the weight and consistency of evidence relating to identification of the gunman and the driver of the suspect vehicle as opposed to the consistency of statements attributed to [Petitioner].

The purpose of the cautionary instruction is to assist the jury in determining if the statement was made. A reviewing court must examine the record to see if there was any conflict in the evidence about the exact words used, their meaning, or whether the admissions were repeated accurately. (Dickey, supra, 35 Cal.4th at p. 905.) Where there was no such conflict in the evidence, but simply a denial by the defendant that he made the statements attributed to him, the reviewing court may find the failure to give the cautionary instruction harmless. (Id. at p. 906.)

> Here, [Petitioner] fails to pinpoint a conflict in the evidence of the statements attributed to him. While [Petitioner] claims his statements bore upon the identity of the driver of the suspect vehicle and the individual who shot Viscarra, he fails to identify a conflict in his statements as recalled and recited by A.S. and C.
>
> Absent such a conflict, the failure to give the cautionary instruction was harmless error. This is particularly true where the jurors were instructed on direct and circumstantial evidence ([Jury Instruction] No. 223), circumstantial evidence and sufficiency of evidence ([Jury Instruction] No. 224), credibility of witnesses ([Jury Instruction] No. 226), union of act and intent ([Jury Instruction] No. 252), all available evidence ([Jury Instruction] No. 300), single witness's testimony ([Jury Instruction] No. 301), accomplice testimony must be corroborated ([Jury Instruction] No. 334), and expert witness testimony ([Jury Instruction] No. 332), among many other relevant concepts.

(See LD No. 3.)

### 2. Analysis

To summarize, Petitioner claims that the jury should have been instructed to consider whether it believed, and how much weight to attribute to testimony regarding any statements Petitioner was alleged to have made outside of court, and to consider with caution evidence of a defendant's oral statement unless it was written or otherwise recorded. See Jury Instruction 358. The Fifth DCA found that while such an instruction should have been given, Petitioner's claim failed because it was harmless error. The Fifth DCA's rationale was that the purpose of that instruction is to help the jury resolve conflicts in testimony as to a defendant's out-of-court statements. The court noted that under California law, "[w]here there was no such conflict in the evidence, but simply a denial by the defendant that he made the statements attributed to him, the review court may find the failure to give the cautionary instruction harmless." (LD No. 3 at 7, citing People v. Dickey, 35 Cal.4th 312, 393 (1997)). The court found that Petitioner had failed to identify a conflict in the evidence of the statements attributed to him in the testimony, and that the instructions that had been given identified many relevant concepts. Therefore, the error was harmless under California law.

Jury instructions are creatures of state procedural and substantive law, and thus a habeas court will strongly defer to the judgments of the state courts with respect to their application. It is conceded in this case that the trial court did in fact err by not providing the

jury instruction in question.  The primary concern here is whether the Fifth DCA applied its "harmless error" standard in a manner that was contrary to, or an unreasonable application of clearly established federal law.

The proper harmless error standard on direct appeal is defined in Chapman v. California, 386 U.S. 18, 24 (1967).  Under the Chapman rule, a trial error is harmless if it is found that, had the error not occurred, it is beyond a reasonable doubt that the jury would have come to the same conclusion.  Id.; see Fry v. Pliler, 551 U.S. 112, 116 (2007); Brecht v. Abrahamson, 507 U.S. 619, 622 (1993).  In a collateral review such as a habeas corpus proceeding, the standard under which relief may be granted is more strict:  The petitioner must show that the error "had substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 637 (quoting Kotteakos v. U.S., 328 U.S. 750, 776 (1946)). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  Brecht, 507 U.S. at 637.

Although the Fifth DCA expressly applied the Chapman harmless error test with regard to Petitioner's second claim for relief, it was not clearly applied to the first claim for relief, which is at issue here.  Instead, the Fifth DCA relied on the California rule in Dickey, which applies to this particular jury instruction and holds that where there is no conflict in oral statement testimony, a reviewing court may find harmless error.  Dickey, 35 Cal. 4th at 393.  Whether or not a state court applies the proper "beyond a reasonable doubt" standard required by Chapman, a habeas court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht." Fry, 551 U.S. at 121-22.  Therefore, the question properly before this Court is simply whether the omission of the jury instruction had a substantial and injurious effect or influence in determining the jury's verdict.

At trial, the sister and a friend of the victim testified as to statements made by Petitioner prior to the murder when Petitioner became involved in an altercation with the victim's sister. The statements made by Petitioner included, "I ought to kill you guys, off you guys." Petitioner

1  did not testify, and there was no evidence introduced at trial controverting the testimony.  To
2  be clear, Petitioner is not arguing that the statements were improperly admitted or should not
3  have been heard before the jury.  He is merely arguing that the members of jury should have
4  been instructed that they were to determine whether or not the statements were made by the
5  defendant, that they were to consider such statements along with all other evidence in
6  reaching a verdict, and that they were to use caution when approaching a defendant's oral
7  statements that were not written down or recorded.

8       The jury in this case received a number of instructions from the court, that when taken
9  together, substantially represent the concepts included in Jury Instruction 358.   These
10 included:

11      (1) That defendant must be found guilty beyond a reasonable doubt, stating, "you
12      must impartially compare and consider all the evidence that was received throughout
13      the entire trial."  Jury Instruction 220.
14      (2) A definition of direct and circumstantial evidence, stating, "[y]ou must decide
15      whether a fact in issue has been proved based on all the evidence."  Jury Instruction
16      223.
17      (3) Instructions on sufficiency of circumstantial evidence, stating that the government
18      must prove all circumstantial evidence beyond a reasonable doubt and that if
19      circumstantial evidence is used, guilt must be the only possible inference.   Jury
20      Instruction 224.
21      (4) Instructions on the credibility or believability of witnesses, stating that, "[y]ou may
22      believe all, part, or none of any witness's testimony.  Consider the testimony of each
23      witness and decide how much of it you believe," and that jurors should "not
24      automatically reject testimony just because of inconsistencies or conflicts.  Consider
25      whether the differences are important or not."  Jury Instruction 226.
26      (5) Instructions that "the testimony of only one witness can prove any fact.  Before you
27      conclude that the testimony of one witness proves a fact, you should carefully review
28      all the evidence."  Jury Instruction 301.

The jurors were instructed on how to treat circumstantial evidence, that it is the purview of the jury to determine credibility of witnesses, that the prosecution's case must be presented beyond a reasonable doubt, and that all evidence before the jury must be carefully considered. Taken together, these instructions embody roughly the same concepts that are included in Jury Instruction 358.

Petitioner merely contends the jury should have been better instructed, not that the statements should have been excluded. Even if these statements had been excluded, there was a substantial amount of evidence available upon which to convict Petitioner. This evidence includes the testimony of the victim's sister and her friend regarding their observations of the altercation with Petitioner (notwithstanding Petitioner's statements), and the testimony of codefendant See regarding the murder weapon and Petitioner's conduct.

Petitioner argues that had the jurors been properly instructed, they would have discredited the testimony regarding his alleged statements and arrived at a different verdict. Such an argument is unpersuasive, especially considering the other evidence presented to the jury, that the instructions given to the jury largely encompassed the provisions of Jury Instruction 358, and that by all indications, the testimony regarding Petitioner's statements was credible.

This Court finds that the omission of Jury Instruction 358 did not have a substantial and injurious effect or influence in determining the jury's verdict. The error did not actually prejudice defendant. Brecht, 507 U.S. at 637. There is no indication that the Fifth DCA ruled in a manner that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). For these reasons, it is recommended that the claim be denied.

### B. Failure to Give Jury Instruction 700

Petitioner's second claim alleges the trial court erred in failing to instruct the jury sua sponte with Jury Instruction 700, which instructs the jury that the prosecution must prove any

1 special circumstance allegations beyond a reasonable doubt, and that the jury must be
2 unanimous in finding the defendant guilty of any special circumstances.  In making this claim,
3 Petitioner does not raise any question of federal law on which this court may grant relief.  As
4 we have stated, jury instructions are governed by state procedural and substantive law.  In the
5 interest of providing Petitioner with the most complete appeal possible, this Court will assume
6 that petitioner is alleging this error by the state courts constituted a violation of his right to due
7 process of law under the Fourteenth Amendment.  Respondent contends Petitioner has not
8 made a claim upon which this court may grant relief, that Petitioner is incorrect, and that the
9 state court reasonably rejected the claim.  This claim was also presented on direct appeal to
10 the Fifth DCA where it was rejected.

### 1. State Court Review

The appellate court issued the last reasoned decision, as follows:

*II. FAILURE TO GIVE [JURY INSTRUCTION] NO. 700*

> [Petitioner] contends the special circumstance findings must be reversed because the jury was not instructed about the prosecution's burden of proof and the requirement of jury unanimity pursuant to [Jury Instruction] No. 700.$^{FN4}$ The People concede that the trial court had a sua sponte duty to so instruct but maintain any error was harmless.
>
> FN4. [Jury Instruction] No. 700 (special circumstances: introduction) states:
>
> "If you find (the/a) defendant guilty of first degree murder, you must also decide whether the People have proved that [one or more of] the special circumstance[s] is true.
>
> "The People have the burden of proving (the/each) special circumstance beyond a reasonable doubt. If the People have not met this burden, you must find the special circumstance has not been proved. [You must return a verdict form stating true or not true for each special circumstance on which you all agree.]
>
> "In order for you to return a finding that a special circumstance is or is not true, all 12 of you must agree.
>
> "[You must (consider each special circumstance separately/ [and you must] consider each special circumstance separately for each defendant).]"
>
> When a trial court fails to instruct on the prosecution's burden of proving each element of a charged offense beyond a reasonable doubt, the prejudicial effect of the omission must be measured under the Chapman$^{FN5}$ standard of

error. Under Chapman, an error is harmless when it is shown beyond a reasonable doubt that the error did not contribute to the verdict. (People v. Williams (1997) 16 Cal.4th 635, 689.) An error is harmless if the jury made the required finding under other, properly given, instructions. (People v. Ayers (2005) 125 Cal.App.4th 988, 998.)

FN5. Chapman v. California (1967) 386 U.S. 18.

[Petitioner] argues that the People cannot demonstrate beyond a reasonable doubt that the error did not contribute to the verdict. This is especially so when this error is considered with the error discussed above, and that both special circumstance allegations had specific intent elements.

The trial court instructed the jury in [Jury Instruction] No. 200, advising: "Pay careful attention to all of these instructions and consider them together." The trial court also instructed the jury in [Jury Instruction] No. 220, stating in pertinent part:

> "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt ."[FN6]

FN6. We note the trial court deviated from the pattern language of [Jury Instruction] No. 220 by omitting the concluding phrase of that sentence: "... unless I specifically tell you otherwise."

The trial court further advised the jury, pursuant to [Jury Instruction] No. 223, that "Facts may be proved by direct or circumstantial evidence or by a combination of both." The court also gave [Jury Instruction] No. 224, which stated:

> "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt."

The trial court also instructed in [Jury Instruction] No. 735 (special circumstances; discharge from vehicle) as follows:

> "The defendant is charged with the special circumstance of committing murder by shooting a firearm from a motor vehicle.
>
> "To prove that this special circumstance is true, the People must prove that, one, someone shot a firearm from a motor vehicle killing Natividad Viscarra; two, the person who discharged the firearm intentionally shot at a person who was outside the vehicle; three, at the time of the shooting the defendant intended to kill."

The trial court further instructed in [Jury Instruction] No. 736 (special circumstances; killing by street gang) as follows:

> "The defendant is charged with the special circumstance of

>committing murder while an active participant in a criminal street gang. To prove that this special circumstance is true, the People must prove that the defendant intentionally killed Natividad Viscarra; two, at the time of the killing, the defendant was an active participant in a criminal street gang; three, the defendant knew what members of the gang engaged in or have engaged in a pattern of criminal gang activity; four, the murder was carried out to further the activities of the criminal street gang.
>
>"'Active participant' means involvement in a criminal street gang in a way that is more than passive or in name only. The People do not have to prove the defendant devoted all or a substantial part of his time or effort to the gang, or that he was an actual member of the gang.
>
>"A criminal street gang is defined in another instruction, which you should refer."
>
>In instructing on a felony committed for the benefit of a criminal street gang ([Jury Instruction] No. 1401), the trial court stated: "The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved." Finally, the trial court instructed in [Jury Instruction] No. 3550 (pre-deliberation instructions), stating: "Your verdict on each count and any special findings must be unanimous. This means that, to return a verdict, all of you must agree to it."
>
>Early in the instructions, the trial court clearly advised the jury: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt."
>
>As the People note, the trial court never instructed the jury to determine any issue by a burden of proof other than proof beyond a reasonable doubt. Taken together, the instructions given by the trial court indicated to the jury that the prosecutor's burden throughout trial was proof beyond a reasonable doubt. (People v. Frye (1998) 18 Cal.4th 894, 965, disapproved on another point in People v. Doolin (2009) 45 Cal.4th 390, 421, fn. 22.) We conclude that it was not reasonably likely that the jury misperceived the standard of proof applicable to a determination of the truth of the special circumstances and reversal for instructional error is not required.

(See Resp't's Lodged Doc. 3.)

   2.   Analysis

Petitioner claims that the jury should have been instructed that the prosecution's burden of proof for any alleged special circumstances was beyond a reasonable doubt, and that unanimity among the jurors was required for such a finding. The Fifth DCA found that while such an instruction should have been given, Petitioner's claim failed because it was harmless

error.

The Fifth DCA's rationale was that in light of all the other jury instructions that were given, it is highly improbable that the jury did not understand that the burden of proof was beyond a reasonable doubt and that unanimity was required of them. The court noted that under Chapman, 386 U.S. at 24, "an error is harmless when it is shown beyond a reasonable doubt that the error did not contribute to the verdict." Lodged Doc. 3 at 8. The court found that it was "not reasonably likely that the jury misperceived the standard of proof applicable." Id. at 10-11.

Jury instructions are creatures of state procedural and substantive law and strong deference will be given to the judgments of the state courts with respect to their application. It is conceded in this case that the trial court did in fact err by not providing the jury instruction in question. The primary concern here is whether the Fifth DCA applied the "harmless error" standard in a manner that was contrary to, or an unreasonable application of clearly established federal law.

The harmless error standard in Chapman, 386 U.S. at 24, as described in claim one, and as applied here by the Fifth DCA, is the proper standard of review on direct appeal under federal law. Thus, the task of this court is to apply the substantial and injurious effect standard from Brecht, and find whether the omission of Jury Instruction 700 had a substantial and injurious effect or influence in determining the jury's verdict. Brecht, 507 U.S. at 637.

The Fifth DCA observed that there were multiple instances in the instructions that were given where the court instructed the jury that it must make findings beyond a reasonable doubt. Specifically, the court read Jury Instruction 220, which stated, "[w]henever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt." Moreover, there were no instances where the jury was instructed to apply any standard other than beyond a reasonable doubt. It would thus not be reasonable, absent some evidence to the contrary, to conclude that the jury did not understand that the standard was beyond a reasonable doubt.

With regards to unanimity, the court read Jury Instruction 3550, stating, "[y]our verdict on each count and *any special findings* must be unanimous. This means that, to return a

1 verdict, all of you must agree to it" (emphasis added).  Although the language is slightly
2 different, this is substantially the same unanimity instruction that Petitioner is claiming was
3 omitted.  The jury returned a unanimous verdict against Petitioner, and the Court fails to
4 understand how further instruction to the jury on the unanimity requirement could have resulted
5 in a different verdict.

6 Despite the omission of Jury Instruction 700, it is clear that the jurors in this case were
7 instructed that they were required to make their findings beyond a reasonable doubt, and that
8 they could only do so by unanimous agreement.  Petitioner has not alleged any evidence to the
9 contrary.  Therefore, this Court finds that the omission of Jury Instruction 700 did not have a
10 substantial and injurious effect or influence in determining the jury's verdict.  The error did not
11 actually prejudice defendant.  Brecht, 507 U.S. at 637  There is no indication that either the
12 Fifth DCA or the trial court ruled in a manner that was "contrary to, or involved an unreasonable
13 application of, clearly established Federal law, as determined by the Supreme Court of the
14 United States; or resulted in a decision that was based on an unreasonable determination of
15 the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).
16 For these reasons, Petitioner's second claim lacks merit.

17 **IV.    CONCLUSION**

18 This Court finds that the omission of Jury Instructions 358 and 700 did not have a
19 substantial and injurious effect or influence in determining the jury's verdict, and that the state
20 court's ruling was not contrary to, nor involved an unreasonable application of, clearly
21 established federal law.  Moreover, the state court's ruling was not based on an unreasonable
22 determination of the facts in light of the evidence presented in that proceeding.  28 U.S.C. §
23 2254(d).  Therefore, it is recommended that the petition be denied.

24 **V.    RECOMMENDATION**

25 Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be
26 DENIED with prejudice. It is further recommended that the Clerk of Court be directed to enter
27 judgment.

28 This Findings and Recommendation is submitted to the assigned District Judge,

1  pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being
2  served with the Findings and Recommendation, any party may file written objections with the
3  Court and serve a copy on all parties.  Such a document should be captioned "Objections to
4  Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be
5  served and filed within fourteen (14) days after service of the objections.  The parties are
6  advised that failure to file objections within the specified time may waive the right to appeal the
7  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

10 IT IS SO ORDERED.

11 Dated:    October 24, 2012                    /s/ *Michael J. Seng*
                                                 UNITED STATES MAGISTRATE JUDGE